AMERICAN FELT CO. v. BURNET, Commissioner of Internal Revenue.

No. 5303.

Court of Appeals of District of Columbia.

Argued March 8, 1932.

Decided April 4, 1932.

Frank L. Peckham, of Washington, D. C., and Hugh D. McLellan and W. Sidney Felton, both of Boston, Mass., for appellant.

Sewall Key, C. M. Charest, D. M. Evans, G. A. Youngquist, J. Louis Monarch, and Carlton Fox, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, and GRONER, Associate Justices.

MARTIN, Chief Justice.

The question involved herein is whether the appellant corporation is entitled to a deduction of $426,789.07, in its income tax re-

turns for the year 1919. The deduction is claimed as a "debt ascertained to be worthless and charged off within the taxable year," within section 234 (a) (5) of the Revenue Act of 1918, 40 Stat. 1057, 1078.

The claim was disallowed by the Commissioner of Internal Revenue, and his decision was sustained by the Board of Tax Appeals.

The American Felt Company, hereinafter called the felt company, was a Massachusetts corporation organized prior to 1911 for the purpose of manufacturing and dealing in felt and woolen goods. Willett, Sears & Co. was a partnership, and prior to 1917, and until July 31, 1918, was in control of the felt company. Willett acted as its chief executive officer, and Sears successively as its vice president and treasurer.

At the same time the Roxbury Carpet Company and the Saxonville Mills were Massachusetts corporations which were operated as a single business organization, and had together a total outstanding capital stock of 1,290 shares. In April, 1917, the owners of 80 per cent. of this stock sold their holdings to Willett, Sears & Co., at the price of $1,250 per share, upon terms of 25 per cent. cash upon transfer of the stock, the remainder to be paid in notes of the partnership. These notes were to be held for collection by the National Shawmut Bank, hereinafter called the bank, and were to be secured by deposit of all the transferred stock with the bank, as collateral, with authority to sell the stock in case of default and apply the proceeds to the payment of the notes. On April 25, 1917, Willett, Sears & Co. made the cash payment of about $400,000, and executed and deposited with the bank the notes for the deferred payments, together with the stock as collateral.

Up to this time the name of the felt company had not appeared in the transaction, nor was the same reflected in the books of that company.

In June, 1917, at the direction of Sears, the bookkeeper of the felt company opened a new account in the books of the company, entitled "Roxbury Carpet, Saxonville Mills Purchase," debiting the account as of April 25, 1917, in the amount of $400,000, and correspondingly crediting the account of Willett, Sears & Co. with the same amount.

In February, 1918, the felt company issued a check upon its funds in the bank in the amount of $408,890.63, and also checks upon three other banks in the aggregate amount of $26,789.07. These checks were made payable to the bank, and the funds were used as payments upon the notes which had been executed by Willett, Sears & Co. for the stock. All of the checks were drawn by the direction of Sears given to the bookkeeper of the felt company, and were signed by the properly authorized officers of that company.

In July, 1918, Willett, Sears & Co. disposed of its interest in the felt company and relinquished control of it. At the end of 1918 the "Roxbury Carpet, Saxonville Mills Purchase" account upon the felt company's books showed a debit balance of $826,000, resulting in most part from the credit of $400,000 given to Willett, Sears & Co. as of April 25, 1917, and the check for $408,890.63 drawn by the felt company in February, 1918, and used by the bank in part payment of the notes. At the end of 1918, the felt company charged off the item of $400,000 in this account as worthless. But the item of $426,000 was retained on its books at that time as the basis of a claim against the bank.

In December, 1918, the purchase-money notes deposited as collateral with the bank were in default in an amount exceeding $800,000, whereupon the bank sold the stock for approximately $600,000, leaving an unpaid balance in excess of $170,000 due upon the notes.

In March, 1919, Willett, Sears & Co. entered into a voluntary composition with their creditors, paying 15 per cent. upon the balance remaining due upon these notes. The felt company at this time delivered to the partnership a general release of all liabilities. The consideration for the release does not appear in the record.

In 1919 the felt company was indebted to the bank in a very large amount and was dependent upon it for credit. Therefore, for the purpose of retaining the good will of the bank, a general release was prepared by the company's counsel and executed by its treasurer and delivered to the bank. The item of $426,000 was charged off in 1919. In January, 1920, the release was ratified by the felt company.

In its income tax returns the felt company claimed a deduction of $400,000 as a loss in 1918, and claimed the amount of $426,789.07 as a loss in 1919. The Commissioner, however, held that both amounts constituted a loss sustained in the year 1918, and recognized a deduction of $826,789.07 for that year.

The felt company, however, contends that checks aggregating $426,789.63, including that for $408,890.63 drawn in February,

1918, were drawn in the name of the company, and paid by the bank upon the notes given by Willett, Sears & Co. for the purchased stock, without proper corporate authority, and that the bank was not authorized to accept the same nor pay the amount thereof on the notes of the partnership; that the felt company therefore had a valid claim against the bank for the amount of the checks, which claim did not cease to be valid until the year 1919, when it was discharged by force of the release given by the felt company to Willett, Sears & Co., and that the claim was a proper deduction in 1919, and was not deductible in 1918 as determined by the Commissioner. The amount is therefore claimed as a deduction in 1919 as a debt ascertained to be worthless and charged off in that taxable year. We cannot sustain this claim.

If the felt company in the year 1919 had a valid claim against Willett, Sears & Co. in the sum of $426,789.63, upon which the bank was also liable, the claim was not worthless. The bank was solvent, and a valid claim against it was all the time collectible. The fact that the felt company executed a release of the claim to Willett, Sears & Co. for a consideration not stated in the record is not sufficient to prove that the claim was worthless, nor is the fact that the felt company for business considerations executed a like release to the bank sufficient to establish that the claim, if once valid, had become worthless. A valid debt is not ascertained to be worthless where the creditor for considerations satisfactory to himself voluntarily releases a solvent debtor from liability.

In our opinion, therefore, appellant has failed to establish a right to a deduction for 1919, and the decision of the Board of Tax Appeals to that effect is affirmed.

GRONER, Associate Judge (concurring):
I agree that the decision of the Board of Tax Appeals should be affirmed, but I prefer to put it on the ground that the facts show that the contract out of which the loss arose was the contract of the taxpayer, at least to the extent of the payments made by it on account thereof. In this view, it is clear that no claim or debt of any kind arose in favor of the taxpayer against the bank, and therefore the question whether the release to the bank was voluntary or involuntary is not material. The loss by reason of the sale of the stock through the default in the contract admittedly occurring in 1918, was, as the Commissioner determined, deductible only in that year.