Josephine W. D. HENRY
v.
UNITED STATES.
No. 581-57.

United States Court of Claims.
Feb. 3, 1960.

Elden McFarland, Washington, D. C., for plaintiff.

Robert Livingston, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. James P. Garland and Lyle M. Turner, Washington, D. C., were on the brief.

LITTLETON, Judge (Retired).

Plaintiff sues for a refund of income tax for the year 1948. The tax was paid pursuant to a determination by the Commissioner of Internal Revenue that a loss of $27,873.50, claimed by plaintiff as an ordinary loss, fully deductible as such under section 23(e) (2) of the Internal Revenue Code of 1939, 26 U.S.C. (1952 ed.), § 23(e) (2), was a short-term capital loss arising from a non-business bad debt, under section 23(k) (4) of the 1939 Code, 26 U.S.C. (1952 ed.), § 23(k) (4), and therefore subject to the $1,000 limitation on deductions for capital losses (§ 117(d) (2), Int.Rev.Code of 1939, as amended, 26 U.S.C. (1952 ed.), § 117(d) (2)). We are of the opinion that the opinion that the Commissioner was correct in his determination that plaintiff's loss resulted from a non-business bad debt.

On April 9, 1948, plaintiff was owed a total amount of $40,768.11 by one Irene Specht. This amount included sums which plaintiff paid for and advanced upon certain mortgages on property owned by Irene Specht, real estate taxes on the property which had been paid by plaintiff, and unpaid interest on the mortgage indebtedness. On that date, Irene Specht was financially unable to pay the amount she owed to plaintiff, and the parties entered into an agreement whereby Irene Specht transferred the mortgaged property to plaintiff and plaintiff accepted it in full satisfaction of the indebtedness. On June 25, 1948, plaintiff sold the property for $15,000, but incurred expenses of $2,105.39, realizing a net amount of $12,894.61. Plaintiff claimed $27,873.50, the difference between the amount of the debt and the net amount realized from the sale of the property, as a fully deductible loss for the taxable year 1948. The Commissioner disallowed that amount as a fully deductible loss, determined that plaintiff was entitled to treat it as a short-term capital loss, limited plaintiff's deduction to $1,000, and assessed a deficiency tax on the additional $26,873.50. Plaintiff paid the assessed deficiency and interest thereon and filed a claim for refund. No part of the tax paid has been refunded, and plaintiff instituted this action to recover the amounts paid, plus interest according to law.

Plaintiff claims that the loss she incurred as a result of the transaction described above was a loss incurred in a transaction entered into for profit. Such a loss would be fully deductible under section 23(e) (2) of the Internal Revenue Code of 1939, supra, which provides:

"§ 23. Deductions from gross income. In computing net income there shall be allowed as deductions:

\*  \*  \*  \*  \*  \*

"(e) Losses by individuals. In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

\*  \*  \*  \*  \*  \*

"(2) if incurred in any transaction entered into for profit, though not connected with the trade or business;"

Defendant asserts that plaintiff's loss resulted from a non-business bad debt, so that its deductibility is governed by section 23(k) (4) of the Internal Revenue Code of 1939, supra, which provides:

"§ 23(k). Bad debts.

\*  \*  \*  \*  \*  \*

"(4) Non-business debts. In the case of a taxpayer, other than a corporation, if a non-business debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. The term 'non-business debt' means a debt other than a debt evidenced by a security as defined in paragraph (3) and other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business."

Subsections (e) and (k) are mutually exclusive, and an amount deductible under one is not deductible under the other. A loss attributable to the worthlessness of a debt must be regarded as a bad debt loss, deductible as such or not at all. Putnam v. Commissioner, 352 U.S. 82, 87, 77 S.Ct. 175, 1 L.Ed.2d 144; Spring City Foundry Co. v. Commissioner, 292 U.S. 182, 54 S.Ct. 644, 78 L.Ed. 1200.

Plaintiff asserts that Bowles Lunch, Inc. v. United States, 33 F.Supp. 235, 91 Ct.Cl. 292, requires the conclusion that, because she had released the debt, so that there was no longer any debt in existence, there was no debt which had become worthless within the taxable year requiring treatment under section 23(k) (4).

We do not think this is so.

In Raffold Process Corp. v. Commissioner, 1 Cir., 153 F.2d 168, the taxpayers had entered into a composition agreement with their debtor whereby they

agreed to release the debtor from its obligation in return for its payment to them of ten percent of the amount owed. They claimed a deduction for the difference between the amount owed and the amount received under the agreement as a bad debt under section 23(k). The court held that the agreement in itself did not establish the taxpayers' right to deductions for a bad debt, but that the question was whether during the year in which the deduction was claimed the debt became worthless irrespective of the composition agreement. The court went on to find that the Tax Court in its decision there under review had substantial basis for concluding as a matter of fact that the debt had not become worthless. See also American Felt Co. v. Burnet, 61 App. D.C. 125, 58 F.2d 530 and Sitterding v. Commissioner, 20 T.C. 130.

■ We think that this reasoning is a proper interpretation of the statutory language. Section 23(k) requires short-term capital loss treatment for a non-business debt which "becomes worthless" within the taxable year. Whether the debt is released or not, if it becomes worthless, that is all the statute requires. In this case, the parties have agreed that the debtor was, in 1948 (the taxable year in question), financially unable to repay the money owed to plaintiff-taxpayer. Plaintiff's non-business debt therefore became worthless during the taxable year, and must be treated as a short-term capital loss, under section 23(k) (4).

Plaintiff's principal reliance is on the case of Bowles Lunch, Inc. v. United States, supra. In that case plaintiff had sold certain real estate for a consideration part of which was secured by mortgages on the property. It later repossessed the property, which was reconveyed to it, and in consideration for the reconveyance it released the parties who were *personally* liable on the mortgages from their obligations. By its repossession, plaintiff acquired an equity of some $94,000, but the amount due on the mortgages had been more than $176,000, so plaintiff claimed a tax deduction of almost $82,000 *either* as a bad debt under section 23(j) of the Revenue Act of 1928, 45 Stat. 791, 800, 26 U.S.C.A.Int.Rev. Acts, page 357, or as a loss under section 23(f) of that Act. The court held that the loss was deductible as a loss in connection with the repossession of property in consideration for the cancellation of all or a part of the indebtedness against it, under section 23(f), supra, but not as a bad debt. As the basis for its conclusion that the loss was not deductible as a bad debt, the court said, 33 F.Supp. at page 239, 91 Ct.Cl. at pages 298–299:

> "Since the parties personally liable were released from liability and the property was reconveyed to the mortgagee, the liability was extinguished, the debt was wiped out. Since there was no longer a debt, the plaintiff is not entitled to a deduction under section 23(j)."

This language does not have the force of a positive holding, since the *issue before the court* was whether there was a *loss* deductible *under either of the subsections*, not under which of the two the loss was deductible. It does lend some support to plaintiff's position, but we think it is not controlling. It should be noted that the language of section 23(j) of the 1928 Revenue Act, with which the court was concerned in Bowles Lunch, was entirely different from that of section 23(k) (4) of the 1939 Code with which we are here concerned. Section 23(j) by its terms applied to "debts ascertained to be worthless *and charged off within the taxable year*" (italics supplied), whereas section 23(k) (4) applies when "a non-business debt becomes worthless within the taxable year." While the language of section 23(j) might suggest the conclusion that a debt which had been wiped out by a release of liability had not been "charged off" and therefore did not come within the terms of the section, it is difficult to see how such a debt could be considered not to have "become worthless within the taxable year," as required by section 23(k) (4). To the extent that Bowles Lunch might imply that, under the circum-

stances of this case, plaintiff's debt had not become worthless within the meaning of section 23(k) (4), it is hereby overruled.

The Bowles Lunch case is inconsistent with the decisions of the Courts of Appeals in Commissioner of Internal Revenue v. National Bank of Commerce of San Antonio, 5 Cir., 112 F.2d 946, and Commissioner of Internal Revenue v. Spreckels, 9 Cir., 120 F.2d 517. The National Bank of Commerce of San Antonio case held that there was a bad debt loss under section 23(k) of the Revenue Act of 1934, 48 Stat. 680, 689, 26 U.S.C.A. Int.Rev.Acts, page 673, when a taxpayer received property which had secured an indebtedness and cancelled the debt. The court said, 112 F.2d at page 947, that "everything that occurred here was in the usual course of a debtor and creditor transaction; the making of the loans; the default on them; their closing out because of insolvency and depreciation; the losses consequent thereon. * * * there was no sale but a mere winding up of, and a realization of loss, on a bad debt transaction."

Commissioner of Internal Revenue v. Spreckels, supra, reaches the same result. Taxpayer there, after an investigation, determined that her debtor's financial condition was such that no recovery would be possible under a deficiency judgment upon foreclosure of the mortgage on the property which secured the debt. She then took a deed to the property from her debtor and canceled his indebtedness. The property had a fair market value which was some $70,000 less than the amount of the indebtedness, plus the costs taxpayer had incurred in protecting the security. The court held that the $70,000 was deductible as a bad debt loss, under section 23(k) of the Revenue Act of 1934, supra. The court said, 120 F.2d at page 521, that " * * * Mrs. Spreckels' loss would be considered,

by the average business man and layman, as a bad debt loss. Common sense indicates the same conclusion and should prevail." See also Bingham v. Commissioner, 2 Cir., 105 F.2d 971 and Cushman v. United States, D.C.Ariz.1956, 148 F. Supp. 880, 887, where the court held that when a business debt which had in fact become worthless was disposed of in the course of the debtor-creditor relationship by settlement or compromise with the debtor, there was a deductible debt under section 23(k).

Plaintiff attempts to explain away National Bank of Commerce of San Antonio, Spreckels, and Bingham on the grounds that there would have been no difference in tax result in those cases if the losses were classified as bad debts or as ordinary losses, and that the courts in those cases did not discuss the possible application of section 23(e) which is urged by plaintiff here. We think this does not help plaintiff. In view of the well-established principle that the deductions as bad debts and as ordinary losses are *mutually exclusive*, we find that the reasoning in the cases which conclude that the losses there were bad debt losses is persuasive in the circumstances of this case. There are cases in the Board of Tax Appeals and some language in cases of the Tax Court which support the position urged by plaintiff.[1] We have considered and studied these cases carefully, but find that we are not in agreement with them. As we read the requirement of section 23(k) (4) of the Internal Revenue Code of 1939 that short-term capital gain treatment be given to losses incurred when non-business debts become worthless within the taxable year, it is applicable when such debts do in fact become worthless, regardless of whether the indebtedness is subsequently released.

Plaintiff is not entitled to recover. The petition is therefore dismissed.

It is so ordered.

1.  Pacific Novelty Co. v. Commissioner, 5 B.T.A. 1017; First National Bank of Durant v. Commissioner, 6 B.T.A. 545; West Coast Securities Co. v. Commissioner, 14 T.C. 947, 961; Loewi & Co. v. Commissioner, 23 T.C. 486, 491. But see Stewart v. Commissioner, 39 B.T.A. 87, and Carlson v. Commissioner, 39 B.T.A. 185, 189–190.

JONES, Chief Judge, and LARA-MORE and MADDEN, Judges, concur.

WHITAKER, Judge (concurring).

In Bowles Lunch v. United States, 33 F.Supp. 235, 91 Ct.Cl. 292, the taxpayer claimed a deduction either under subsection (f) or (j) of section 23 of the Revenue Act of 1928. The first allowed a deduction for a loss sustained in a non-business transaction entered into for profit, and the second, on account of a bad debt.

The plaintiff in that case had sold a piece of property, a part of the consideration for which was secured by a mortgage on the property sold. When it became apparent that the purchaser could not pay the balance due, plaintiff accepted a deed to the mortgaged property and cancelled the debt. Judges Littleton and Green and the then Chief Justice and I thought the transaction fell within the category of transactions entered into for profit, and allowed the deduction under this subsection, rather than under the subsection allowing the deduction of a bad debt.

In arriving at this conclusion, we were influenced by two things: one, the debt had been satisfied by the acceptance of a deed to the property; and, second, article 354 of Regulations 74 of the Internal Revenue Bureau allowed the deduction of a loss where property securing a debt had been repossessed. The article of the Regulations relied on is no longer in effect.

Unquestionably there was a loss in a transaction entered into for profit, but it is also true that the loss arose because of the inability of the debtor to pay the debt in full.

An argument can be made for placing the transaction in either one of the two categories, as the decisions cited in the Bowles Lunch decision and in the majority opinion in this case show. Now the fact that the debt was satisfied seems to have lost its influence over Judge Littleton, and he and the other judges seem to feel that the transaction in the case at bar falls more appropriately in the bad debt category. That it can be so classified must be admitted, and perhaps correctly so. I concur.